UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GUADALUPE RAMIREZ,

    Plaintiff,

v.

JANET NAPOLITANO, *et al.*,

    Defendants.

NO. C09-305RSL

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on "Plaintiff's Motion for Summary Judgment" (Dkt. # 15) and "Defendants' Opposition to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment" (Dkt. # 19). Plaintiff alleges that United States Citizenship and Immigration Services ("CIS") acted (1) in violation of applicable statutes and regulations and (2) in an arbitrary and capricious manner when it denied Ms. Ramirez applications for adjustment of immigration status and permission to reapply for readmission. The Attorney General responds that CIS acted according to the applicable sections of the Immigration and Naturalization Act ("INA") when it denied Ms. Ramirez's applications, citing the Ninth Circuit's decision in Duran-Gonzales v. Dept. of Homeland Sec., 508 F.3d 1227 (9th Cir. 2007). Though the Court is sympathetic to Ms. Ramirez's predicament, for the reasons that follow, the Court DENIES plaintiff's motion for summary judgment and GRANTS defendants' motion for summary judgment.

## II. FACTUAL BACKGROUND

Plaintiff Guadalupe Ramirez (born Guadalupe Barrientos) is a native and citizen of Mexico who first entered the United States without inspection in 1986 at the age of 15. She married Mr. Angel Ramirez in 1996, and over the last decade has been a stay-at-home mother, raising a family in Tacoma, Washington. Her husband is a legal permanent resident of the United States. Her four children are all United States citizens.

In December 1998, Ms. Ramirez traveled to Mexico to visit her sick mother. On the way back on January 18, 1999, Ms. Ramirez was apprehended by border officials attempting to use another person's documents to enter the United States. Ms. Ramirez was subsequently removed from the country under INA § 212(a)(7)(A)(i), 8 U.S.C. § 1182(a)(7)(A)(i), for having invalid entry documents, and INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), for attempting enter the United States by fraud or misrepresentation. Under these subsections of the INA, Ms. Ramirez was classified "inadmissible" to the United States for 5 years after her removal. Ms. Ramirez, however, by her own admission entered the country without inspection approximately a week later.

On February 16, 2000, Ms. Ramirez's husband, who was by that time a legal permanent resident of the United States, filed a I-130 petition on her behalf for an immigrant visa under INA § 203(a)(2), 8 U.S.C. § 1153(a)(2). Mr. Ramirez inaccurately indicated on Question 16 of the I-130 that his wife had never been under immigration proceedings. See Dkt. #19, Exh. E. Nonetheless, the application was approved June 2, 2001. However, as is usual given the limited number of visas available each year, no immigrant visa numbers were available at that time to Ms. Ramirez. So, while waiting for her permanent visa, Ms. Ramirez applied for and was granted a "nonimmigrant" V visa in 2004.[1]

The parties dispute the particulars of the process by which Ms. Ramirez obtained her V

---

[1] As discussed in more detail later, pursuant to the Legal Immigration Family Equity ("LIFE") Act passed December 21, 2000, spouses and children of legal permanent residents were permitted to obtain temporary nonimmigrant "V visas" while waiting to adjust their status to permanent resident.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 2

visa. Plaintiff argues that USCIS considered and waived her previous immigration violations and all grounds of inadmissibility arising from them when it granted Ms. Ramirez's V visa in 2004. In support of this assertion, plaintiff points to: (1) a USCIS "Request for Additional Evidence" sent to Ms. Ramirez on April 19, 2004 which explicitly refers to Ms. Ramirez's 1999 illegal entry and expedited removal and (2) a form I-94, which shows proof of a legal visa issued to Ms. Ramirez four months later on August 24, 2004. <u>See</u> Complaint (Dkt. #1), Exhs. B & H. Plaintiff concludes that this means Ms. Ramirez was "lawfully admitted" in 2004, meaning that she either received at that time an actual I-212 waiver of inadmissibility stemming from her previous immigration violations or, at the least, an implicit waiver of that inadmissibility by virtue of the "lawful status" conferred by her V visa. <u>See</u>, <u>e.g.</u>, Plaintiff's Motion for Summary Judgment at 6, 10. As discussed in greater detail below, the government denies that Ms. Ramirez was granted either an explicit or implicit waiver in 2004. While waiting for permanent status to be approved, Ms. Ramirez renewed her V visa in 2006.

On July 17, 2007, Ms. Ramirez filed an I-485 application for adjustment of status to permanent resident. In this application, she admits that she had been removed from the United States in 1999 and had reentered without inspection one week later. Despite the fact that she now claims to have received an implicit or explicit waiver of inadmissibility in 2004, Ms. Ramirez also submitted, along with her I-485 adjustment application, an application for waiver of inadmissibility, Form I-601, and an application for permission to reapply for admission, Form I-212. On August 22, 2008, CIS sent Ms. Ramirez letters which denied all of her applications and petitions. Defendants' Motion for Summary Judgment, Exhs. M, N. CIS also revoked Ms. Ramirez's employment authorization and ordered her to leave the United States immediately.

### III. DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor," Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995), or where there is a "complete failure of proof concerning an essential element of the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. U.S. v. Johnson Controls, Inc., 457 F.3d 1009, 1013 (9th Cir. 2006). However, "the mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton, 68 F.3d at 1221. These standards also apply to cross motions for summary judgment. Brown v. City of Los Angeles, 521 F.3d 1238, 1240 (9th Cir. 2008).

**B.    Arbitrary and Capricious Standard**

The Administrative Procedures Act ("APA") provides a cause of action to persons "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. A reviewing court can find an agency action unlawful and set aside findings that are, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Review under the arbitrary and capricious standard is "'narrow'" and the court will generally "not substitute [its] judgment for that of the agency." Tucson Herpetological Soc. v. Salazar, 566 F.3d 870, 875 (9th Cir. 2009) (quoting The Lands Council v. McNair, 537 F.3d 981, 987 (9th Cir. 2008) (en banc)). Thus, the Court can reverse "only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Lands Council, 537 F.3d at 987 (internal citations omitted).

Additionally, to the extent the government's arguments are predicated upon on CIS's interpretation of ambiguities inherent in the statute, the Court applies Chevron deference. Under Chevron, the Court must not impose its own construction of ambiguities in the statutory scheme, but rather decide whether the agency's position is based on a permissible construction of the statute. National Cable & Telecommunications Ass'n v. Brand X Internet Services, 545 U.S. 967, 982-83 (2005) ("Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction"); see also Duran-Gonzales v. Department of Homeland Sec., 508 F.3d 1227, 1236 (9th Cir. 2007) (applying Brand X and Chevron to the INA).

**C.  Applicable Substantive Law**

The INA and its corresponding federal regulations ("C.F.R.") comprise a complex statutory scheme made up of many, sometimes duplicative, not always completely congruous subsections which have been interpreted to different effect at different times by various courts. Both parties have in their briefs made extensive use of these provisions and the tensions between them. Those most relevant to the Court's reasoning are outlined below.

In 1994, Congress amended the INA, providing for adjustment of status for certain aliens otherwise ineligible for such relief because of their unlawful status in the United States. Pub.L. No. 103-317, Title V § 506(b), 108 Stat. 1724, 1765-66 (1994) (the special adjustment provision). The special adjustment provision excepted these aliens from certain admissibility requirements for adjustment of status, allowing the Attorney General to adjust the status of an alien who had entered the United States without inspection to that of a legal permanent resident provided that the alien was "admissible" to the United States and (in this first iteration) the beneficiary of an immediately available immigrant visa. See INA § 245, 8 U.S.C. § 1255.

In 1998, Congress extended the availability of the special adjustment provision to aliens who were the beneficiaries of an alien relative petition (I-130) filed on or before January 14,

1998. Pub.L. No. 105-119, § 111, 11 Stat. 2440 (1997). Finally, in 2000 Congress revised the special adjustment provision to include beneficiaries of an I-130 petition filed on or before April 30, 2001. LIFE Act Amendment of 2000, Pub.L. No. 106-554, § 1502(a), 114 Stat. 2763 (2000). The 2000 provision requires that the beneficiary of the petition filed after January 14, 1998, be physically present in the United States on December 20, 2000. INA § 245(i)(C), 8 U.S.C. § 1255(i)(C).

The LIFE Act also permits spouses and children of legal permanent residents who have filed I-130 petitions on their behalf and who have been waiting for a visa number for at least three years to obtain a so-called "nonimmigrant" V visa while waiting to apply for special adjustment. INA § 101(a)(15)(V), 8 U.S.C. § 1101(a)(15)(V). It is relevant to note here that a V visa is automatically revoked 30 days following the denial of an adjustment of status. C.F.R. § 214.15(j)(1)(iii).

In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), also effecting large scale changes to the INA. Pub.L. No. 104-208, div. C, 110 Stat. 3009 (1996). Though various additional grounds of inadmissibility under IIRIRA are cited in the parties' briefs, two provisions pertaining to aliens who reenter the United States after being previously removed or deported are particularly relevant here – INA § 212(a)(9)(C)(i)(II), 8 U.S.C. 1182(a)(9)(C)(i)(II), (the inadmissibility provision for previously removed aliens unlawfully present in the United States), and INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), (the reinstatement provision).

INA § 212(a)(9)(C)(i)(II), 8 U.S.C. 1182(a)(9)(C)(i)(II) provides a lifetime bar on admission to aliens who have illegally reentered the U.S. after a removal order, subject to a discretionary waiver by the Secretary of Homeland Security permitting an alien to reapply for admission from abroad after at least ten years have elapsed since the alien's latest departure from the United States. This "consent to reapply" exception provides that:

> [The permanent bar to admissibility] shall not apply to an alien seeking admission more than 10 years after the date of the alien's last departure from the United

> States if, prior to the alien's reembarkation at a place outside the United States or attempt to be readmitted from a foreign contiguous territory, the Attorney General has consented to the alien's reapplying for admission.

The reinstatement provision, INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), provides for the reinstatement of a previous removal order "at any time" if the Attorney General finds that an alien has reentered the United States illegally, and further declares that the alien may not apply for any further relief:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

**D.     The August 22, 2008 Denial Letters**

On August 22, 2008, CIS sent Ms. Ramirez a denial of adjustment of status. See Defendants' Motion for Summary Judgment, Ehx. M. In pertinent part, the letter stated: "You were deported from the United States on 18 Jan 1999, and as such are inadmissible to enter the United States for a period of 5 years. Records reflect you [*sic*] that you reentered the United States without inspection on or about January 1999." It continues: "Based upon the foregoing facts and law and in accordance with Section 241(a)(5), it has been determined that the application for status as a permanent resident be denied." Id. The letter informs Ms. Ramirez of imminent removal proceedings pursuant to Section 241(a)(5), that her employment authorization has been revoked, and that she must depart the United States immediately. Id.

On the same day, CIS sent Ms. Ramirez another letter denying her Form I-212. See Defendants' Motion for Summary Judgment, Ehx. N. Again referring to Ms. Ramirez's illegal re-entry after removal, it cites INA § 212(a)(9)(C)(i)(II), 8 U.S.C. 1182(a)(9)(C)(i)(II) and states: "You are required by law to remain outside the United States for a period of 10 years after 18 Jan 1999 before you can file Form I-212. You are statutorily ineligible to file Form I-212, therefore your application must be, and hereby is denied." The letter also cites the Ninth Circuit's decision in Duran-Gonzales, which held that an alien in violation of INA §

212(a)(9)(C)(i)(II) who has not remained outside the United States for 10 years cannot apply for a I-212 waiver. Duran-Gonzales adopted the reasoning of a recent Board of Immigration Appeals ("BIA") decision, and says in part:

> In In re Torres-Garcia, the BIA held that an applicant who is inadmissible under subsection (a)(9)(C)(i)(II) is also ineligible to adjust his status under the special adjustment provision from within the United States. The alien is bound by subsection (a)(9)(C)(ii), requiring that he obtain permission to apply for readmission from outside the United States after ten years have lapsed from the date of his last departure. The BIA's decision is clearly reasonable and is therefore entitled to Chevron deference under Brand X.

Duran-Gonzalez v. Dept. of Homeland Sec., 508 F.3d 1227, 1242 (9th Cir. 2007).

The plain language of INA § 241(a)(5) and INA § 212(a)(9)(C)(i)(II) supports CIS's decisions. Together these provisions work to reinstate Ms. Ramirez's previous removal order and, at the least, prohibit her from applying for further relief under the INA unless the application is made from outside the United States and at least 10 years after her last departure from the United States.

Plaintiff offers two main arguments in response to this line of reasoning. First, she argues that any consequences stemming from her illegal re-entry to the United States in 1999 were waived, either explicitly or implicitly, by the CIS's grant of a V visa in 2004. Second, Ms. Ramirez argues that her applications should have been processed and decided under the rule of Perez-Gonzalez v. Ashcroft, 379 F.3d 783 (9th Cir. 2004), which allowed for filing of waiver applications along with applications for special adjustment, regardless of the reinstatement provision and Subsection (a)(9)(C)(i)(II), rather than under the rule of Duran-Gonzalez, which overruled Perez-Gonzalez.

**E.     The Alleged 2004 Waivers**

The Court has carefully considered the issue of whether any explicit or implicit waivers of inadmissibility regarding special status adjustment were granted along with or by virtue of Ms. Ramirez's temporary nonimmigrant visa. On the one hand, from plaintiff's standpoint, it is reasonable to believe that, in light of CIS's April 19, 2004 I-539 request for more information

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 8

concerning Ms. Ramirez's illegal entry and deportation and CIS's subsequent August 24, 2006 grant of V visa status, CIS did consider Ms. Ramirez's removal from the United States in 1999 when it granted her V visa in 2004. See Complaint, Exhs. B, H. It also follows that if CIS was made aware of Ms. Ramirez's prior removal before it granted her V visa (as the I-539 Form indicates), it should have reasoned that Ms. Ramirez had reentered the United States without inspection because (1) Ms. Ramirez must have been present in the United States on December 20, 2000 to have been the beneficiary of an I-130 petition and (2) simply because Ms. Ramirez was present in the United States when she applied for her V visa. Presumably, this reentry would have triggered the same grounds of inadmissibility and reinstatement of removal in 2004 that CIS cites in the August 22, 2008 denial letters. Plaintiff argues that if CIS knew of Ms. Ramirez's previous immigration violations when it issued her V visa, then it necessarily must have waived any inadmissibility arising from those violations. See, e.g., Plaintiff's Motion at 6, 10.

In response, the government denies it issued any waivers in 2004. Moreover, it argues that its approval of a V visa in 2004 was "error" because "Ms. Ramirez remained ineligible based on prior inadmissibility." Defendants' Motion at 10. Further, it argues that the grant of a V visa does not waive inadmissibility for the purposes of special adjustment of status. The Court addresses these arguments in turn.

*1.     The Evidence Does Not Indicate Explicit Waivers Were Granted in 2004*

The Court finds that the evidence does not indicate that Ms. Ramirez was issued any explicit waivers in 2004, even when viewing the evidence and drawing all reasonable inferences therefrom in the light most favorable to plaintiff. If Ms. Ramirez had indeed applied for and been granted a waiver of her previous grounds of inadmissibility, some proof or claim of it would show up in her papers or file. As the government points out, while Ms. Ramirez has produced numerous immigration documents and the CIS has provided her "A-file" under seal (Dkt. #13), there is no mention of any 2004 I-212 or I-601 waiver among these papers. In fact, a letter in that file from Ms. Ramirez's counsel to CIS dated July 25, 2007 indicates that Ms.

Ramirez did not possess or claim to have any waivers when she applied for adjustment of status, admitting at one point that "Ms. Ramirez may be subject to reinstatement of her prior removal order" and elsewhere that Ms. Ramirez "is also applying for an I-601 waiver because she presented a false document at the time of her apprehension in 1999." Dkt. #13 at L129.

Further, the record is void of any affirmative signed declaration by Ms. Ramirez that she ever possessed such a document. It is also notable that though plaintiff's current argument for the existence of a waiver is predicated upon the fact that CIS "specifically asked her to respond to a request for evidence regarding" a removal order (Dkt. #22 at 5), she nowhere alleges how, when, or even if she actually responded to that request. Further, the I-212 and I-601 applications plaintiff submitted in 2007 with her application for change in status imply that she did not already possess a waiver.

In sum, plaintiff has failed to show facts sufficient to establish that such any waivers were issued in 2004. Celotex, 477 U.S. at 322 (Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Further, as discussed below, the Court also finds that even if such waivers were issued, they would not affect the legal bases of CIS's 2008 denial letters.

 2. *Ms. Ramirez Was Ineligible for a V visa in 2004*

The Court agrees with defendants that Ms. Ramirez was issued a V visa in error given her inadmissibility arising from INA § 212 (a)(9)(C)(i)(II). As defendants note, while the C.F.R. which sets forth the conditions under which a beneficiary of a timely I-130 petition may apply for a non-immigrant V visa specifically exempts consideration of certain grounds of inadmissibility ("in determining the alien's admissibility in V nonimmigrant status, sections 212(a)(6)(A), (a)(7), and (a)(9)(B) of the Act do not apply"), it does not similarly prohibit consideration of permanent inadmissibility under INA § 212 (a)(9)(C)(i)(II). See 8 C.F.R. § 214.15(f). Thus, as an illegal reentrant after removal, Ms. Ramirez was by a plain reading of INA § 212 (a)(9)(C)(i)(II) and 8 C.F.R. § 214.15(f) inadmissible to the United States in 2004

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 10

even for the limited purposes of admissibility in temporary nonimmigrant status.

Plaintiffs argue in response that Ms. Ramirez was eligible for a waiver of INA § 212 (a)(9)(C)(i)(II) inadmissibility. See Dkt. #22 at 5. However, as stated previously, while waivers of INA § 212 (a)(9)(C)(i)(II) inadmissibility are available to aliens who seek readmission from outside the United States more than 10 years after their last departure from the United States, Ms. Ramirez would not have been eligible to apply for a waiver as she had not remained outside of the United States for 10 years. Therefore, even had the CIS sought to grant Ms. Ramirez the necessary waivers in 2004 (of which there are no records), under a plain reading of the statute, it would not have been capable to waive inadmissibility under INA § 212 (a)(9)(C)(i)(II) at that time.

If the grant of a V visa was indeed error, the next logical question is whether CIS's grant of a V visa in 2004 somehow constitutes an implicit waiver of inadmissibility or estops CIS from later denying her special adjustment of status. This possibility is foreclosed by the Ninth Circuit's holding that a mistaken procedural admission does not equal a lawful admission under the INA:

> Admission is not lawful if it is regular only in form. The term "lawfully" denotes compliance with substantive legal requirements, not mere procedural regularity . . . . The provisions concerning deportation demonstrate that what is essential is lawful status, not regular procedure. An alien is subject to deportation if at the time of entry [he] was within one or more of the classes of aliens excludable by the law existing at the time of such entry.

Monet v. I.N.S., 791 F.2d 752, 753 -754 (9th Cir. 1986) (quoting Matter of Longstaff, 716 F.2d 1439, 1441 (5th Cir. 1983), *cert. denied*, 467 U.S. 1219 (1984)); see also In Lai Haw Wong v. I.N.S, 474 F.2d 739, 741 (9th Cir. 1973) (approving the BIA's ruling that aliens' admissions on visas to which they were not entitled conferred no lawful status on the aliens for purposes of obtaining relief from deportation).

*3. The INA Does Not Indicate that Admissibility in Temporary V Status Equals Admissibility for Special Status Adjustment*

Finally, the INA itself indicates that even were waivers granted in 2004, and even if they were not error, they would not serve as waivers for purposes of special status adjustment.

Plaintiff argues that a waiver of inadmissibility was available to Ms. Ramirez in 2004 through INA § 212(d)(3), 8 U.S.C. § 1182(d)(3). See Dkt. #22 at 5. However, INA § 212(d)(3) by its terms only grants an alien found inadmissible under INA § 212(a) and seeking a "nonimmigrant" visa "temporary" admission into the United States. See INA § 212(d)(3)(i), 8 U.S.C. § 1182(d)(3)(i) (providing that an alien applying for a non-immigrant visa and known to be ineligible due to inadmissibility under INA § 212(a) "may, after approval by the Attorney General of a recommendation by the Secretary of State or by the consular officer that the alien be *admitted temporarily despite his inadmissibility*, be granted such a visa and may be admitted into the United States *temporarily as a non-immigrant* in the discretion of the Attorney General"); INA § 212(d)(3)(ii), 8 U.S.C. § 1182(d)(3)(ii) (providing that an alien inadmissible under INA § 212(a) who is seeking admission and who possesses appropriate documents or is granted a waiver of such documents "may be admitted into the United States *temporarily as a non-immigrant* in the discretion of the Attorney General") (emphases added).

Plaintiff's argument that the grant of a V visa *ipso facto* implies a waiver of inadmissibility applying to status adjustment is also belied by the C.F.R. C.F.R. § 214.15(f), discussed above, like INA § 212(d)(3)(I) only contemplates admissibility "in V nonimmigrant status." Further, C.F.R. § 214.15(j), which provides for the revocation of V status following denial of, *inter alia*, an application for adjustment of status, obviously contemplates V visa holders who are inadmissible on other grounds:

> j) Termination of status—(1) General. The status of an alien admitted to the United States as a V nonimmigrant under section 101(a)(15)(V) of the Act shall be automatically terminated 30 days following the occurrence of any of the following:
> (i) The denial, withdrawal, or revocation of the Form I–130, Petition for Immediate Relative, filed on behalf of that alien;
> (ii) The denial or withdrawal of the immigrant visa application filed by that alien;
> (iii) The denial or withdrawal of the alien's application for adjustment of status to that of lawful permanent residence;

In sum, it appears that CIS was in error when it granted Ms. Ramirez a V visa in 2004, and correct when it subsequently denied her adjustment application in 2008. Its apparent error in 2004 did not waive Ms. Ramirez's inadmissibility in 2007, as the 2004 admission was

procedural and not substantive.  Moreover, even if the V visa was not granted in error, its existence in no way constitutes a waiver of INA § 212(a)(9)(C)(i)(II) or of the reinstatement provision with regard to her application for status adjustment.[2]

The Court therefore finds that CIS's interpretation of the INA and C.F.R in its submissions and denial letters, which tracks the Court's reasoning outlined above, is clearly reasonable and not arbitrary or capricious.  Finding no statutory direction otherwise, the Court defers to CIS's construction that admission in V status does not waive inadmissibility for the purposes of special status adjustment.

### F. The "Retroactive" Effect of Duran-Gonzales

Plaintiff finally argues that CIS should not have applied Duran-Gonzales's rule precluding aliens subject to §§ 212(a)(9)(C)(i)(II) and 241(a) from applying for I-212 and I-601 waivers concurrent with their status adjustment applications. Plaintiff argues instead that this Court should apply the rule of Perez-Gonzales v. Ashcroft, 379 F.3d 783 (9th Cir. 2004), which was Ninth Circuit law when she applied for adjustment of status on July 17, 2007 and which was effectively overturned by Duran-Gonzales.

Without reopening the actual issues in these decisions (which have, in any case, been covered largely by the statutory analysis in this decision), the Court finds the law here is clear regarding retroactivity – Duran-Gonzales's rule applies.  "The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student." Rivers v. Roadway Exp., Inc., 511 U.S. 298, 311-12 (1994).  Thus, "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." Id. at 312-13.  When a court

---

[2] Plaintiff's statutory arguments as to whether the reinstatement provision should apply to a V visa holder who is an illegal reentrant are also unavailing.  For example, plaintiff cites twice to a single sentence from 8 C.F.R. § 241.8(a)(3), which specifies the procedure for reinstatement of removal under Section 241(a)(5) ("The immigration officer shall attempt to verify an alien's claim, if any, that he or she was lawfully admitted, which shall include a check of Service data systems available to the officer.")  The Court fails to see how it follows from that one sentence that temporary V status admission bars reinstatement of a previous removal order.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 13

"applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open . . . and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." Harper v. Va. Dept. of Taxation, 509 U.S. 86, 97 (1993). Indeed, the Ninth Circuit implicitly foreclosed plaintiff's retroactivity argument when it denied the appeal of the similarly situated plaintiffs in Duran-Gonzales, who themselves argued that Perez-Gonzales should apply to their applications. The District Court on remand similarly held: "Contrary to Plaintiffs' argument, the Ninth Circuit's silence on the retroactivity of its decision requires this Court to assume that it carries full retrospective effect." Gonzalez v. Dept. of Homeland Sec., 2009 WL 302283, at *5 (W.D. Wa. Feb. 6, 2009).

## III. CONCLUSION

In conclusion, because the evidence is not sufficient to show there was an actual waiver in 2004, because any explicit or implicit waiver would likely be error and not in accord with substantive law, and because the mere existence of a temporary nonimmigrant visa is not in itself proof of a waiver of inadmissibility as to permanent status adjustment, plaintiff has failed to show the existence of a material fact sufficient to withstand summary judgment. Further, it is clear under Duran-Gonzales that Ms. Ramirez was not eligible to apply for a waiver of her inadmissibility concurrent with her application for status adjustment and that the CIS's denial of that application was not arbitrary and capricious.

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment and DENIES plaintiff's motion for summary judgment. The Clerk of Court is directed to enter judgment against plaintiff and in favor of defendant.

DATED this 20th day of January, 2010.

Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 14